**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

THEODORE DIGGS,

    **Plaintiff,**

    **vs.**

FORT LINCOLN CEMETARY, LLC,

    **Defendant.**

\* \* \* \* \* \*

    \*
    \*
    \*
    \*  **Civil Action No.**  8:25-cv-02202-AAQ
    \*
    \*
    \*

### MEMORANDUM OPINION AND ORDER

  This is a case concerning the alleged failure of a funeral service business to provide a viewing of the deceased before cremation.  Plaintiff Theodore Diggs ("Plaintiff"), the surviving son of Vera L. Poland, alleges that Fort Lincoln Cemetery, LLC ("Defendant") breached its contract for funeral services, a viewing, and cremation of his mother.  ECF No. 11.  Plaintiff also alleges Defendant owed Plaintiff a duty of care, which it negligently breached when it cremated Plaintiff's mother without providing notice or a viewing for her family and friends.  *Id*.  Pending before the Court are Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint,[1] ECF No. 14, Plaintiff's Motion for Summary Judgment, ECF No. 18, and Defendant's Motion for Summary Judgment, ECF No. 21.  The Motions have been fully briefed, and a hearing is not

---

[1] Because Defendant filed it simultaneously with its Answer to Plaintiff's Complaint, ECF No. 15, the Court will treat Defendant's Motion as having been filed under Federal Rule of Civil Procedure 12(c) requesting judgment on the pleadings.  *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (treating motion to dismiss for failure to state claim under Rule 12(b)(6), filed simultaneously with an answer, as a motion for judgment on pleadings under Rule 12(c)).  Whether Plaintiff's Amended Complaint establishes a claim upon which relief can be granted is evaluated the same under Rule 12(c) and Rule 12(b).  *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

necessary under this Court's Local Rules.  *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons discussed below: 1) Defendant's Motion to Dismiss, ECF No. 14, shall be denied; 2) Plaintiff's Motion for Summary Judgment, ECF No. 18, shall be denied; 3) Defendant's Motion for Summary Judgment limiting Plaintiff's Damages, ECF No. 21, shall be granted, in part, limiting Plaintiff's damages arising out of his breach of contract claim to $2,929.95.

### BACKGROUND

The parties agree on the basic facts of the case.  Vera L. Poland, the mother of Plaintiff Theodore Diggs, died on May 14, 2025.  ECF No. 11, at 1–2; ECF No. 15 at 2.  On May 16, 2025, Plaintiff contracted with Defendant Fort Lincoln Cemetery, LLC, a Maryland limited liability corporation operating a funeral service business to handle his mother's cremation.  ECF No. 11, at 2; ECF No. 15, at 2.  On or around June 11, 2025, Defendant cremated Ms. Poland's remains.  ECF No. 11, at 2; ECF No. 15, at 2.

The parties disagree about the scope and type of services included in the contract and the events preceding and following the cremation of Ms. Poland's remains.  According to Plaintiff, in addition to cremation, he contracted with Defendant to hold a viewing of his mother prior to cremation.  ECF No. 11, at 2.  Defendant counters that Plaintiff never indicated that he wanted a viewing or a witnessed cremation.  ECF No. 21-8, at 1–2.  Defendant states that when presented with a price list for services which included a viewing or witnessed cremation,[2] Plaintiff chose the unwitnessed cremation, which was the most affordable option.  *Id.* at 2.  Defendant attached to its Opposition and Motion for Summary Judgment five agreements regarding Ms. Poland's cremation

---

[2] Defendant states that it provided Plaintiff a price list from which he selected services. ECF No. 21-2, at 3.  A "Statement of Funeral Services and Goods Selected" similarly mentions that the "General Price List effective on 05/13/2025," was provided to Plaintiff.  *See* ECF No. 21-3, at 3. No price list was attached to the Motion for Summary Judgment or the Opposition.

which the parties signed on May 16, 2025: (i) the Statement of Funeral Goods and Services Selected ("Statement"); (ii) the Maryland Authorization for Cremation and Disposition; (iii) the Authorization for Minimal Preparation; (iv) the Terms of Payment Options for Your Convenience; and (v) the Identification Acknowledgement.  ECF No. 21-2, at 2, ECF Nos. 21-3 to 21-7.

The Statement lists the services Plaintiff selected and agreed to pay for.  ECF No. 21-3, at 2.  The statement includes "Direct Cremation" and does not list a viewing or witnessed cremation. *Id.*  The Statement provides notice to the purchaser:

> SEE TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT.  DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.  BY SIGNING BELOW, YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS AND ACKNOWLEDGE THAT THESE TERMS AND CONDITIONS ARE PART OF THIS AGREEMENT.  YOU ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.

ECF No. 21-3, at 4.  The "terms and conditions" provide for, among other things, a "limitation of damages":

> IN NO EVENT WILL WE BE LIABLE TO YOU FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE, EVEN IF ONE OF OUR REPRESENTATIVES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  IN NO EVENT SHALL THE AGGREGATE DAMAGES AGAINST US OR OUR LIABILITY EXCEED THE CHARGES PAID BY YOU UNDER THIS AGREEMENT.  SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

*Id.* at 5.  The total amount of the contract is $2,929.95.  *Id.*, at 2; ECF No. 21-2, at 3.  Plaintiff has not disputed that he signed the Statement attached as Exhibit 1, ECF No. 21-3.

At some point before the cremation took place, Plaintiff asked Defendant's employee, Jacqueline Wills, to alert him when Defendant received the funds for his mother's cremation and when Defendant scheduled his mother's cremation.  ECF No. 11, at 2; ECF No. 18, at 5.  Although

Ms. Wills promised to do so, she never notified Plaintiff of the date of his mother's cremation. ECF No. 11, at 2; ECF No. 18, at 5. On or around June 11, 2025, Defendant cremated Ms. Poland's remains without a viewing, ECF No. 21-8, at 1, of which Plaintiff learned shortly thereafter. ECF No. 11, at 2. Plaintiff states that Defendant's failure to hold a viewing caused him to be "distressed," "deprived [Plaintiff and his family][3] of the opportunity to say . . . goodbye[,]" and the "opportunity to express their sadness," which in turn hindered their "healing process." *Id.* at 2, 3; ECF No. 18, at 5.

Sometime after the cremation, Plaintiff visited Fort Lincoln Cemetery to discuss the matter with Luke Cain, Defendant's General Manager. ECF No. 11, at 2; ECF No. 21-8, at 1. The parties dispute what was said during this conversation. Plaintiff claims that when confronted about his mother's cremation, Mr. Cain admitted to Plaintiff that Defendant should not have cremated his mother's remains without "witness permission," which it should have "scheduled". ECF No. 11, at 2; ECF No. 18, at 5. Defendant denies that Mr. Cain made this concession. ECF No. 21-8, at 2. Defendant states that its policy, which Mr. Cain explained to Plaintiff, is to suspend cremations "pending payment and proceed once payment is received." *Id.* at 1. "Cremations proceed either by verification of a family member of the deceased identity or if a family member . . . provides a photograph for identification." *Id.* According to Defendant, Plaintiff elected to submit a recent photograph and signed the Identification Acknowledgement; therefore, it could proceed with Ms. Poland's cremation upon receipt of payment without further consent from Plaintiff. *Id.*; ECF No. 21-7, at 1–2.

---

[3] Theodore Diggs is the only plaintiff listed in the Amended Complaint. ECF No. 11.

4

On July 9, 2025, Plaintiff filed a Complaint against Defendant alleging breach of contract, negligence, and negligent infliction of emotional distress. ECF No. 1. On August 11, 2025, Plaintiff filed an Amended Complaint removing his claim for negligent infliction of emotional distress but maintaining his claims for breach of contract and negligence. ECF No. 11. Related to his contract and negligence claims, Plaintiff seeks $500,000 in compensatory damages, and any other damages this Court deems just and reasonable, including attorney fees and costs. *Id.* at 2, 3.

On August 19, 2025, Defendant filed its Answer to the Amended Complaint, ECF No. 15, as well as a Motion to Dismiss Count II of Plaintiff's Amended Complaint, citing Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 14-1. In its Answer, Defendant admitted that it is a limited liability corporation operating a funeral service business in the State of Maryland. ECF No. 15, at 2. It also admitted that Ms. Poland passed, that Defendant and Plaintiff agreed to a contract, and that Defendant cremated Ms. Poland's remains, but denied the rest of the allegations in the Amended Complaint. *Id.* Additionally, Defendant pled affirmative defenses, including that Plaintiff failed to state a claim upon which relief can be granted and the agreements between the parties contain a "limitation of liability and damages". *Id.* at 3. Plaintiff responded in opposition to the Motion on August 27, 2025, arguing that Defendant owed Plaintiff a duty of care independent of their contractual relationship and that Defendant's negligence proximately caused Plaintiff to experience "emotional and mental distress." ECF No. 19, at 3.

On August 22, 2025, Plaintiff filed a Motion for Summary Judgement, ECF No. 18. In support, Plaintiff filed an affidavit largely repeating the facts in Plaintiff's Amended Complaint. ECF No. 18, at 5. On September 3, 2025, Defendant filed its Opposition to Plaintiff's Motion for Summary Judgment and Affirmative Motion for Summary Judgment. ECF No. 21-2. Defendant

opposes Plaintiff's Motion for Summary Judgment because it fails to comply with Federal Rule of Procedure 56(a); is premature as additional discovery is necessary; and there are genuine disputes of material facts. ECF No. 21-2, at 1. Defendant also seeks partial summary judgment to limit Plaintiff's potential damages to the amount of the contract pursuant to the Statement's Terms and Conditions. *Id.* at 6–7. On January 20, 2026, the Court ordered Plaintiff to respond to Defendant's affirmative summary judgement arguments. ECF No. 22. On January 21, 2026, Plaintiff responded by filing a Motion for Clarification stating that Defendant had not filed a motion for summary judgment. ECF No. 23. On January 22, 2026, the Court scheduled a Status Conference, ECF No. 24, which it cancelled after Plaintiff filed his Response to Defendant's Summary Judgment Motion, ECF No. 25, on January 23, 2026. ECF No. 26. In his Response to Defendant's Summary Judgment Motion, Plaintiff argues that the contract is one of adhesion and therefore, unconscionable. ECF No. 25, at 3. The parties have not conducted any discovery, and the Court has not issued a scheduling order in the case. ECF No. 21-9, at 1.

## ANALYSIS

### I. Defendant's Motion for Judgment on the Pleadings

In its Motion to Dismiss, converted here to a Motion for Judgment on the Pleadings, Defendant argues that Plaintiff has failed to establish a negligence claim upon which relief can be granted because Maryland law prevents him from recovering under a tort theory of negligence when the case is essentially a contract dispute. ECF No. 14-1. Based on the facts in Plaintiff's

Amended Complaint and Defendant's Answer: 1) Plaintiff has sufficiently pled a negligence claim; and 2) the economic loss doctrine does not bar Plaintiff's negligence claim.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(c) "provides that after the pleadings are closed, a defendant may present a defense of failure to state a claim upon which relief may be granted by judgment on the pleadings." *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F.Supp.2d 596, 600 (D. Md. 2006); Fed. R. Civ. P. 12(c), (h)(2)(B).  The same standard of review applies to Rule 12(c) motions for judgment on the pleadings and motions to dismiss for failure to state a claim under Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).  Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss claims where there is a "failure to state a claim upon which relief can be granted."  When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must assess whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged." *Id.*  The plaintiff need not plead facts that are probable but must present facts showcasing more than a "sheer possibility" that the conduct perpetuated by a defendant is unlawful. *Id.*  Plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  That said, the purpose of Rule 12(b)(6) and Rule 12(c) motions is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim,

or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

### B. Plaintiff Has Sufficiently Pled that Defendant Was Negligent.

To establish negligence under Maryland law, a plaintiff must prove the following four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Street v. Wylie Funeral Home, P.A.*, No. CV RDB-21-1970, 2022 WL 2315745, at *4 (D. Md. June 28, 2022) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270–71 (Md. 2007)). "Two of the relevant factors to consider in determining whether such a duty should be recognized are 'the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 800 (D. Md. 2013) (quoting *Grimes v. Kennedy Krieger Inst., Inc.*, 782 A.2d 807, 842 (Md. 2001)). Whether a duty of care exists is a pure question of law, but whether there is adequate proof of the additional required elements is a question of fact to be determined by the fact finder. *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999).

Plaintiff has adequately pled a negligence claim against Defendant. Accepting the facts in the Amended Complaint as true, Plaintiff has sufficiently alleged that Defendant owed him a duty of care. Maryland courts recognize that the surviving next of kin has a "quasi property right in the [decedent's] body," which is "not a property right in the general meaning of property right, but is extended for the purpose of determining who shall have the custody of the body in preparing it for burial." *Snyder v. Holy Cross Hosp.*, 352 A.2d 334, 341 (Md. Ct. Spec. App. 1976) (quoting *Painter v. U.S. Fid. & Guar. Co.*, 91 A. 158, 160 (Md. 1914)). As Ms. Poland's "biological son,"

8

ECF No. 11, at 1, Plaintiff had the right to control the disposition of his mother's remains under Maryland law.  *See* Md. Code Health-Gen. § 5-509(c)(2)(ii) (listing an adult child of the decedent as an authorizing agent able to determine the means of disposition of the decedent's body).  Because of this quasi-property right, "[o]ne who . . . negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper internment or cremation is subject to liability to a member of the family of the deceased who is entitled to possession of the body." *Walser v. Resthaven Mem'l Gardens, Inc.*, 633 A.2d 466, 471–72 (Md. Ct. Spec. App. 1993) (citing Restatement (Second) of Torts, § 868).  Therefore, based on the facts in the Amended Complaint, once Defendant contracted with Plaintiff and took possession of Ms. Poland's remains, Defendant owed Plaintiff a duty of care related to the handling of her remains.

Plaintiff sufficiently alleges that Defendant breached its duty of care when it failed to provide a viewing of Plaintiff's mother before she was cremated.  ECF No. 11, at 3.  Cremating a decedent's remains prematurely, against the decedent's son's wishes and without notification, could violate the duty of care by "withhold[ing] . . . the body of a dead person . . . or prevent[ing] [the decedent's] proper . . . cremation[.]"  *See Street*, 2022 WL 2315745, at *4, *5 (finding plaintiff sufficiently alleged a negligence claim based on the mental anguish she suffered because her late husband's remains were buried in contravention of her wishes and the funeral home misrepresented this fact).  Although Maryland courts have not considered Plaintiff's situation, other courts have found that a cemetery breached its duty of care by depriving surviving family members of the ability to witness a loved one's internment.  *See Spiegel v. Evergreen Cemetery Co.*, 186 A. 585, 586–87 (N.J. 1936) (finding that surviving family members had a "common-law right" to witness the internment of their family member, and the mental anguish suffered from being absent during internment was compensable).  Defendant's disposal of the decedent's remains

9

in a manner that deprives the decedent's family of the "solace of the final leave taking," as is alleged here, could foreseeably cause emotional distress[4] to the decedent's family. *Id.* at 586. As other courts have observed, emotional distress to surviving relatives is "the natural and probable consequence" when someone interferes with the proper final disposition of a loved one's remains. *See Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700, 704 (Mo. Ct. App. 1978) ("[P]laintiffs' mental anguish was a natural and probable result of defendant's failure to see that their mother was buried in the vault, which, as part of complete funeral services, they had purchased from defendant.").

Therefore, Plaintiff's Amended Complaint sufficiently alleges that Defendant owed Plaintiff a duty of care and that it breached that duty by failing to follow Plaintiff's instructions for disposition of his mother's remains causing him distress.

### C.  The Economic Loss Doctrine Does Not Preclude Plaintiff's Negligence Claim.

Defendant contends that Maryland law precludes plaintiff "from recovering tort damages for what in fact is a breach of contract." ECF No. 14-1, at 3 (quoting *Cash & Carry Am., Inc. v. Roof Sols., Inc.*, 117 A.3d 52, 60 (Md. Ct. Spec. App. 2015)). According to Defendant, Plaintiff's

---

[4] Maryland permits damages for emotional distress as a form of compensatory damages if "the injury for which recovery is sought is capable of objective determination." *Hoffman v. Stamper*, 867 A.2d 276, 296 (Md. 2005) (citing *Vance v. Vance*, 408 A.2d 728, 733–34 (Md. 1979)). "This 'physical' injury standard permits recovery for such things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs, but excludes recovery based on the plaintiff simply saying, 'This made me feel bad; this upset me.'" *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 549 (D. Md. 2012) (citations omitted). While the Court expresses no opinion at this time as to whether Plaintiff will ultimately be entitled to recover damages for emotional distress under the applicable standards of proof, the claim is not subject to dismissal as a matter of law. *See id.* (denying motion to dismiss emotional distress claims).

negligence claim is essentially a breach of contract claim because Plaintiff does not allege Defendant owed him a duty of care outside of its contractual relationship. *Id*. at 3–4. Defendant notes that plaintiffs are generally precluded from bringing negligence actions to "recover purely economic loss." *Id.* at 3, 4. Accepting all facts in the Amended Complaint as true, the economic loss doctrine does not preclude Plaintiff's negligence claim because: 1) Defendant owed Plaintiff a duty of care independent of the contract; 2) performing defectively under the contract can impose tort liability; and 3) Plaintiff is not seeking purely economic damages.

The economic loss doctrine developed in product liability cases to prevent a plaintiff alleging a defective product from "recover[ing] tort damages for the loss of value or use of the product itself, and the cost to repair or replace the product." *Cash & Carry*, 117 A.3d at 60 (citation omitted). Generally, the doctrine precludes tort liability for what is in fact a breach of contract. *Id*. A tort claim, therefore, must arise out of a duty of care independent from the contractual relationship. *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999). "[W]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of such duty is a tort[.]" *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986) (quoting *Slacum v. E. Shore Tr. Co.*, 163 A. 119, 120 (Md. 1932)). In determining whether a duty exists, courts consider 1) "the nature of the harm likely to result from a failure to exercise due care" and 2) "the relationship that exists between the parties." *Nat. Prod. Sols., LLC v. Vitaquest Int'l, LLC*, No. CCB-13-436, 2014 WL 6383482, at *9 (D. Md. Nov. 13, 2014) (quoting *Jacques*, 515 A.2d at 759).

Additionally, although non-performance under a contract typically does not give rise to a duty in tort, defective performance can. *See Mesmer*, 725 A.2d at 1059 (citing William L.

11

Prosser, Handbook of the Law of Torts § 92, at 614–15 (4th ed. 1971)). The line distinguishing tort and contract liability has been described as "'nonfeasance,' which mean[s] not doing the thing at all," and "'misfeasance,' which mean[s] doing it improperly." *Id.* For example, where a defendant "arguably had a contractual obligation to remove snow from a public sidewalk but failed entirely to undertake the obligation . . . [the court] will not impose tort liability on the basis of contractual obligation that was never undertaken." *Id*. at 1060 (citing *Matyas v. Suburban Tr. Co.*, 263 A.2d 16, 18 (Md. 1970)). But where a party performs a "gratuitous or contractual undertaking which was actually begun but negligently performed," the party can be liable for negligence. *Id.* While Maryland courts have disapproved of the "nonfeasance" and "misfeasance" terminology, "they have generally recognized the distinction" which "draws a valid line between the complete non-performance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort." *Id.* at 1059–60 (collecting cases).

First, the economic loss doctrine is not applicable to Plaintiff's negligence claim because Defendant owed Plaintiff a duty of care independent of their contractual relationship. As discussed above, Maryland courts have recognized that those in possession of a body owe a duty of care to a decedent's family related to the treatment and disposal of a decedent's remains. *Street*, 2022 WL 2315745, at *4 (first citing *Snyder*, 352 A.2d at 341; then citing *Walser*, 633 A.2d at 471–72). Emotional distress is a foreseeable result of depriving a family member of a proper disposition. *See id.* at *5 (denying a motion to dismiss a negligence claim where plaintiff "alleged that she suffered severe emotional injury because of the treatment of her late husband's remains in contravention of her wishes"). Where, as here, there is an independent duty of care between contracting parties, breach of that duty of care can lead to tort liability. *See Jacques*, 515 A.2d at 759, 763.

12

Second, Defendant's alleged conduct falls on the malfeasance side of the line dividing tort liability and contract liability. Defendant did not entirely fail to perform under the contract—by, for example, holding Ms. Poland's body without undertaking any of the contracted-for services. Instead, Plaintiff alleges that Defendant failed to follow its own procedures to ensure Ms. Poland's remains were cremated with Plaintiff's knowledge and consent, ECF No. 11, at 2, failed to notify him of his mother's cremation date after promising to do so, *id.*, and only notified him of his mother's cremation after the fact, *id.*, at which point it was too late for him to find alternative arrangements for a viewing. Taken together, Plaintiff sufficiently alleges that Defendant negligently cremated Ms. Poland's remains, a harm related to but separate from any contract claim. *See Mesmer*, 725 A.2d at 1059–60 (finding that a plaintiff may maintain a tort action where defendant performed a contractual obligation in violation of the appropriate standard of care); *Street*, 2022 WL 2315745, at *3–5 (concluding plaintiff sufficiently pled a breach of contract claim and negligence claim based on defendant funeral home's failure to cremate her husband's remains according to her wishes and their contract); *Hall v. Heather Hill Prop. Co.*, No. 25-cv-0238-ABA, 2026 WL 279112, at *11 (D. Md. Feb. 3, 2026) (denying a motion to dismiss a negligence claim because plaintiff alleged that defendant landlord "undertook [contractual] obligations but executed them in a negligent manner").

Finally, while the Defendant is correct that "plaintiffs are generally precluded from bringing negligence actions to recover purely economic loss," ECF No. 14-1, at 3 (quoting *Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 737 (D. Md. 2008)), here, Plaintiff is not seeking purely economic damages, but rather compensatory damages related to the distress he experienced from the deprivation of a viewing of his mother's body before cremation.

13

*See* ECF No. 11, at 2–3. Therefore, the economic loss doctrine is not applicable to Plaintiff's negligence claim; accordingly, Defendant's Motion to Dismiss is denied.

## II.    Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment claiming that there are no "genuine issues of material fact" in dispute, without specifying whether he is moving on his contract or negligence claim or both. ECF No. 18, at 1–3. Plaintiff supports his Motion with an affidavit largely repeating the same short list of facts included in his Amended Complaint. ECF No. 18, at 5. Defendant opposes the Motion on three bases: 1) contrary to Federal Rule of Civil Procedure 56(a), Plaintiff does not identify the claim or defense on which summary judgment is sought; 2) Defendant's affidavit in support of Plaintiff's Motion and the Affidavit of Luke Cain demonstrate a dispute of material facts relevant to the claims; and 3) Defendant has not had the opportunity to conduct discovery. ECF No. 21-2, at 5–6. Each of these is a sufficient basis to deny Plaintiff's Motion.

### A.  Legal Standard

The Court will only grant a motion for summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The party seeking summary judgment carries the burden of showing that there is no genuine issue as to any material fact in the case. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987) (citing *Charbonnages de France v. Smith*, 597

14

F.2d 406, 414 (4th Cir. 1979)).  The nonmoving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).  Summary judgment is appropriate when the contract in question is unambiguous.  *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007).

**B.  Plaintiff Fails to Identify Which Claims or Defenses on Which He Seeks Summary Judgment.**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Plaintiff fails to identify as to which of his two claims or defendant's affirmative defenses he is seeking summary judgment.  *See* ECF No. 18, at 1 (stating only, "Comes now Theodore Diggs . . . by and through undersigned counsel, and moves this court for an order granting him judgment, on the grounds, hereinafter stated.").  The Plaintiff goes on to restate the facts included in his Amended Complaint: he contracted with Defendant for a viewing before his mother's cremation; he asked Ms. Wills to notify him when the cremation was scheduled; and after learning of his mother's cremation, he confronted Defendant's General Manager who allegedly admitted the cremation should have been suspended pending a "witness permission."  *Id.*  It is difficult to ascertain on which claim Plaintiff moves or its basis, as the Motion cites no legal authority beyond the Federal Rules of Civil Procedure and the U.S. Supreme Court cases setting out the summary judgment standard.  *See id.* at 2.  This alone is a sufficient basis to deny the Motion.  *See Nieves v. Prack*, 172 F. Supp. 3d 647, 651 (W.D.N.Y. 2016) (holding that a party's failure to identify the claims or defenses on which they move for summary judgement is sufficient to deny the motion (citing *Houston v. Sheahan*, No. 13-CV-6594-FPG, 2016 WL 554849, at *1 (W.D.N.Y. Feb. 10, 2016))).

### C. The Court Shall Deny Summary Judgment Because Material Facts Remain in Dispute.

Even if the Court construes Plaintiff's Motion as seeking summary judgment on both of his claims, Plaintiff has failed to demonstrate that he is entitled to such relief at this preliminary stage of the case. First, Plaintiff has not established the foundational fact underlying both his contract and negligence claims: that he contracted for a viewing of his mother's remains before cremation. *See Street*, 2022 WL 2315745, at *4–5 (assessing whether plaintiff alleged that defendant funeral home and its employees acted in contravention of a family member's wishes when analyzing negligence claim); *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."). In support, Plaintiff attaches only his own affidavit, which states that he contracted with Defendant "to handle [his] mother's final rights" but fails to specify what was included in those "final rights." ECF No. 18, at 5. Likewise, Plaintiff declares that Defendant's employee, Jacqueline Wills, promised to notify Plaintiff when Ms. Poland's cremation was scheduled. *Id*. However, without first establishing that Plaintiff and Defendant contracted for a viewing before the cremation, this fact alone is not enough to demonstrate a breach of duty or contract. Finally, Plaintiff testifies that Defendant's General Manager admitted that a witness permission should have been scheduled once payment was received. *Id.* Even accepting that Mr. Cain made this statement, this testimony does not on its own establish that a viewing was contractually required.

Nonetheless, Defendant has presented sufficient facts in response to create a genuine issue of material fact as to whether the parties contracted for a viewing. First, Defendant attaches the relevant contract, which does not list a viewing among the services Plaintiff selected. *See* ECF

No. 21-3, at 2.  Additionally, as Defendant highlights, because Plaintiff signed the Identification

Acknowledgment, it was permitted to proceed with the cremation without further verification from

Plaintiff once he provided a recent photograph of Ms. Poland and Defendant received payment.

ECF No. 21-8, at 1–2.  Finally, in response to Plaintiff's affidavit, Defendant attaches an affidavit

from Mr. Cain, denying that he admitted breaching the contract.  *Id.*

Because Plaintiff has not established that there is no genuine dispute of material fact as to

whether Defendant breached the contract, his Motion for Summary Judgment is denied.

### D.  Defendant Is Entitled to Additional Discovery.

Lastly, summary judgment is not appropriate because Defendant is entitled to discovery on

Plaintiff's claims and its defenses.  Rule 56(d) requires that "summary judgment be refused where

the nonmoving party has not had the opportunity to discover information that is essential to [its]

opposition."  *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (citations omitted); Fed. R.

Civ. P. 56(d).  Where a "nonmovant shows by affidavit or declaration that, for specified reasons,

it cannot present facts essential to justify its opposition," the Court may defer considering the

motion, deny it, or allow time to take discovery.  Fed. R. Civ. P. 56(d).  In support of its request

for additional discovery, counsel for Defendant lists the discovery Defendant would seek relevant

to the parties' claims and defenses including: Plaintiff's deposition; statements from other

witnesses; information about the conversation between Plaintiff and General Manager Luke Cain;

information about Plaintiff's purchases from Defendant; information about Plaintiff's damages;

and additional information from "any experts identified by the parties."  ECF No. 21-9, at 2.

Plaintiff responds that Defendant does not need to depose Plaintiff because Defendant's General

Manager has admitted to breaching the contract.  ECF No. 25, at 3.  As discussed above, the parties

dispute this fact, *see* ECF No. 21-8, at 1–2, and Plaintiff's deposition is likely to produce evidence

17

related to the conversation.  The other discovery Defendant highlights is also highly relevant to Plaintiff's claims and Defendant's defenses.  Accordingly, summary judgment is not appropriate for this reason, as well.

### III.    Defendant's Motion for Summary Judgment to Limit Plaintiff's Damages

In addition to opposing Plaintiff's Motion for Summary Judgment, Defendant moves for partial summary judgment, seeking to limit Plaintiff's potential damages to the amount of the contract, $2,929.95, pursuant to the Statement's limitation of liability clause.  ECF No. 21-2, at 6. Defendant argues that this Court, applying Maryland law, has upheld the enforceability of limitation on liability clauses for breaches of contract.  *Id.* at 7 (citing *Rassa v. Rollins Protective Servs. Co.*, 30 F. Supp. 2d 538, 544–46 (D. Md. 1998)).  While the clause limits Plaintiff's damages for breach of contract to the amount of the contract, it does not limit Plaintiff's damages for Defendant's negligence.

#### A.  The Clause Limits Defendant's Liability for Breach of Contract, but not Negligence.

In Maryland, consistent with "the public policy of freedom of contract," *Wolf v. Ford*, 644 A.2d 522, 525 (Md. 1994), contracting parties can agree to limit liability to an agreed maximum, *Schrier v. Beltway Alarm Co.*, 533 A.2d 1316, 1321 (Md. Ct. Spec. App. 1987).[5]  Courts have

---

[5] A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules.  *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (per curiam) (holding that federal courts sitting in diversity jurisdiction must apply the choice-of-law rules of the state in which the court is located).  "Maryland applies the law of the state in which the contract was formed . . . unless the parties to the contract agreed to be bound by the law of another state."  *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2016). Here, the Statement includes a clause that reads, "[t]his Agreement shall be governed by the local law of the state in which the funeral service is being performed[.]"  ECF No. 21-3, at 6.  The parties signed the Statement, and Defendant performed the funeral services in Maryland.  ECF No. 21-3; ECF No. 21-4, at 1.  Therefore, the Court will apply Maryland contract law.

designated these types of clauses alternatively as "exculpatory" or "limitation on liability". *See id*. at 1319.  "In the absence of legislation to the contrary," clauses limiting liability are generally valid.  *Wolf*, 644 A.2d at 525; *see also Adloo v. H.T. Brown Real Estate, Inc.*, 686 A.2d 298, 301 (Md. 1996) (collecting cases).  A "threshold issue that must be considered" is whether the clause at issue actually "shield[s] one of the parties from liability."  *Adloo*, 686 A.2d at 301.  To determine whether the clause limits liability, the court must ascertain "from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated."  *Id.* at 304 (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985)).

To limit liability for a defendant's negligence, the liability limitation clause must use "language . . . [that] clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence[.]"  *Seigneur v. Nat'l Fitness Inst., Inc.*, 752 A.2d 631, 636–37 (Md. 2000) (quotation omitted).  The standard "is a stringent and exacting one, under which the clause must not simply be unambiguous but also understandable."  *Okorie v. Resident Research*, *LLC*, 617 F. Supp. 3d 320, 323 (D. Md. 2022) (quoting *Adloo*, 686 A.2d at 303).  The clause "need not contain or use the word 'negligence' or any other 'magic words.'"  *Seigneur*, 752 A.2d at 636–37 (quoting *Adloo*, 686 A.2d at 304).  However, "general release language" that does not put a plaintiff on notice of the intent to release a defendant of liability based on its own negligence is not unambiguous.  *Adloo*, 686 A.2d at 304 (citing with approval *Audley v. Melton*, 640 A.2d 777, 779 (N.H. 1994)); *see also Okorie*, 617 F. Supp. 3d at 324 (finding general limitation on liability clauses to be "insufficient to waive liability for negligence when the language did not unambiguously do so.").  If the clause is "unclear and ambiguous, either the intention of the parties must be established through the introduction of

19

relevant parol evidence or the issue resolved by strictly construing the clause against the author." *Adloo*, 686 A.2d at 304.

Three cases highlight the distinction between clauses that are sufficient sufficiently clear as to their applicability to a plaintiff's negligence claim and those that are not.  In *Adloo*, the plaintiffs executed a lock-box authorization form in which they agreed that defendant "nor their agents are an insurer against the loss of personal property; [plaintiff] agrees to waive and releases [defendant] and his agents and/or cooperating agents and brokers from any responsibility therefore."  686 A.2d at 304.  Given the clause's explicit focus on insurance and loss of personal property, the clause could be reasonably interpreted to apply only to theft of plaintiffs' property occurring without defendant's negligence.  *Id.* at 305.  Accordingly, the clause did not "clearly, unequivocally, specifically and unmistakably express the parties' intention to exculpate the [real estate company] from liability resulting from its own negligence[.]"[6]  *Id.*

In contrast, in *Schrier*, owners of a liquor store brought a negligence claim against a theft alarm company after one of the owners was shot and wounded in a robbery of his store.  533 A.2d at 1317–18.  The contract between the parties for installation and maintenance of the alarm system contained a clause stating:

> Company's liability shall be limited to a sum equal to the total of six monthly payments or Two Hundred Fifty Dollars ($250.00) whichever is the lesser . . . and this liability shall be exclusive and shall apply if loss or damage . . . *results directly*

---

[6] A separate clause in the listing agreement stating that the defendant real estate company was not "responsible for vandalism, theft or damage of any nature whatsoever to the property" likewise did not contain a "clear, unequivocal expression" of the parties' intent to release the defendant from liability for its own negligence.  *Adloo*, 686 A.2d at 300, 305.

> *or indirectly to persons or property* from performance or nonperformance of any of
> the obligations herein *or from negligence*[.]

*Id.* at 1318 (emphasis added).  The Maryland Court of Special Appeals found the clause limited liability for defendant's alleged negligence because the operative contract explicitly limited the liability of defendant company to $250.  *Id.* at 1324.

The clause need not explicitly mention negligence, but must, in some way, make clear that it applies specifically to the type of claim that the plaintiff advances.  For example, in *Baker v. Roy H. Haas Associates, Inc.*, the plaintiff, a purchaser of a home, sued his former home inspector alleging that the inspector negligently failed to uncover the poor condition of the home's roof.  629 A.2d 1317, 1318 (Md. Ct. Spec. App. 1993).  The Court of Special Appeals held that the exculpatory clause which explicitly discussed the lack of representations "regarding latent or concealed defects" and then stated that the "sole and exclusive remedy available to the Client is damages in an amount not to exceed the fees actually paid" barred the plaintiff's claim.  *Id.* at 1319–20; *see also id.* at 1320 ("In the instant case, the parties contractually agreed to limit damages, resulting from the failure to discover any defects, solely to the amount of fees paid by Baker for the inspection.").

In this case, the limitations clause clearly circumscribes the damages available to Plaintiff for a breach of contract.  The parties agree they contracted for funeral services, and the contract includes a limitation on liability clause.  *See* ECF No. 21-3, at 4–5; ECF No. 25, at 3.  The limitation on liability clause unambiguously limits Plaintiff's contract-related damages, making inapplicable the "default remedies regime of Maryland contract law."  *Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 735 (2008).  The clause's applicability to Plaintiff's breach of contract claim is evident from the first sentence of the clause which describes damages for

breach of contract to which Defendant will not be subject: "In no event will we be liable to you for any indirect, incidental, special or consequential damages of any nature, even if one of our representatives has been advised of the possibility of such damages." ECF No. 21-3, at 5. Following the list of specific contractual damages, the clause goes on to cap the total breach of contract damages to the contract amount: "In no event shall the aggregate damages against us or our liability exceed the charges paid by you under this agreement." *Id.* The final sentence again discusses damages applicable to a breach of contract claim: "Some states do not allow exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you." *Id.* Courts applying Maryland law have held that clauses like this one validly limit contractual damages. *See Rassa*, 30 F. Supp. 2d at 544–46 ("[T]he contractual limitation of liability provision is enforceable, and the plaintiffs' maximum possible recovery for breach of contract is $500.").

However, the clause fails to unambiguously limit Defendant's liability for its own negligence. Unlike negligence limitation clauses that Maryland courts have upheld, nowhere does the clause indicate the types of defendant's actions or inactions that the liability limitation protects. *See, e.g.*, *Schrier*, 533 A.2d at 1318–19, 1323 (upholding clause limiting liability for "performance or nonperformance of any of the obligations herein or from negligence"); *Baker*, 629 A.2d at 1319–20 (upholding clause limiting liability for failing to detect "latent or concealed defects which may exist"). The clause's use of broad language in the second sentence, like "aggregate damages" and "our liability," is not specific enough to give notice to a reasonable person that the clause prevents them from bringing a negligence claim. *See Okorie*, 617 F. Supp. 3d at 324 (holding that the inclusion of catch-all phrases like "all liability or responsibility" fails to express the requisite intent to release a party from negligence claims); *Audley*, 640 A.2d at 779 (holding that "general release

language" does not put a plaintiff on notice of the intent to release a defendant from liability based on his own negligence); *Adloo*, 686 A.2d at 304 (holding the clause must "clearly and specifically indicate[] the intent to release the defendant from liability for personal injury caused by defendant's negligence[.]").  The clause here provides "no guidance on the types of injuries or claims that are subject to the clause from which an inference of an intent to bar negligence claims can be made." *Okorie*, 617 F. Supp. 3d at 324–25.

Therefore, the Statement's limitation on liability clause limits Plaintiff's breach of contract damages to the contract amount, $2,929.95.  *See Wash. Metro. Area Transit Auth.*, 476 F.3d at 235 ("[S]ummary judgment is appropriate when the contract in question is unambiguous[.]"). However, because the clause does not meet the "stringent and exacting" standard to limit Defendant's liability for negligence, the clause does not limit Plaintiff's negligence damages. *Adloo*, 686 A.2d at 303.

### B. Plaintiff Has Presented Insufficient Evidence that the Clause Is Unconscionable.

In response, Plaintiff argues that the contract signed by the parties is a "unilaterally drafted adhesion contract," presented to Plaintiff as "take or leave it contract" and is therefore, unconscionable because "it seeks to limit its liability when its actions caused the Plaintiff to suffer one of the gravest injuries of all, depriving him, family, and friends" from the opportunity to say goodbye to Ms. Poland at her viewing.  ECF No. 25, at 3.  An adhesion contract is one that is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990) (citing Restatement (Second) of Conflict of Laws § 187, Comment b.).  However, the "fact that a contract is one of adhesion does

not mean that either it or any of its terms are invalid or unenforceable." *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005) (quoting *Meyer*, 582 A.2d at 278). "A court will find a contract of adhesion unenforceable only if it is unconscionable." *Barrie School v. Patch*, 933 A.2d 382, 394 (Md. 2007). Plaintiff has failed to provide any evidence demonstrating that the contract was unconscionable.

In Maryland, to invalidate a contract or clause, it must be both procedurally and substantively unconscionable. *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. Ct. Spec. App. 2007) (citing *Walther*, 872 A.2d at 746–47). Procedural unconscionability "concerns deceptive practices employed at the bargaining table." *Id.* "It relates to the individualized circumstances surrounding each contracting party at the time of contracting." *Id.* Certain elements of the bargaining process tend to indicate the presence of procedural unconscionability, including the "overwhelming bargaining strength" of one of the parties and the "use of fine print or incomprehensible legalese." *Id.* (citing 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1999)). Additional factors a court can consider include:

> age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.

*Id.* (citing *Wisc. Auto Title Loans v. Jones*, 714 N.W.2d 155, 165 (Wisc. 2006)). In comparison, substantive unconscionability concerns the actual terms of the contract. *Doyle*, 918 A.2d at 1274.

Plaintiff has provided no evidence that the contracting process was deceptive or unfair. Plaintiff asserts in his Response that the contract was "take it or leave it," but does not include an affidavit supporting this assertion. *See Celotex*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by [his] own affidavits . . . designate 'specific

24

facts showing that there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e))).  Plaintiff fails to describe how the contract process was procedurally unconscionable; for example, whether there was any negotiation, whether alterations in the printed terms were requested or would have been permitted, or whether there were alternative providers that Plaintiff could have contacted. *See Doyle*, 918 A.2d at 1274 (listing facts relevant to determining procedural unconscionability).

Further, the available evidence suggests that the clause is not procedurally unconscionable. Plaintiff does not dispute that he signed the Statement, thereby agreeing to its terms and conditions. The Statement's signature page warns the purchaser not to sign the contract before reading the terms and conditions, including the limitation on liability clause.  *See* ECF No. 21-3, at 4, 5; *see also Walther*, 872 A.2d at 745 ("[T]he law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." (quoting *Merit Music Serv., Inc. v. Sonneborn*, 225 A.2d 470, 474 (1967))).  Additionally, Plaintiff has presented evidence that he was able to advocate and bargain for himself.  Plaintiff's Affidavit in Support of his Motion for Summary Judgment states that he selected the funeral services he wanted for his mother, ECF No. 18, at 1, 5, and requested Defendant take additional steps to notify him about receipt of payment and timing of his mother's cremation, *id.* at 5.  *See also Newell v. SCI Ala. Funeral Servs., LLC*, 233 So.3d 326, 334 (Ala. 2017) (funeral services contract was not procedurally unconscionable despite plaintiff's "emotional state" because he was able to advocate for himself: he selected the desired funeral services and insisted the process be concluded as soon as possible). *But see Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 816–18, 822–24 (Tenn. Ct. App. 2015) (holding that a funeral services contract was unconscionable because, among other reasons, defendant funeral home presented plaintiff with the contract after the funeral home had started embalming the body making it difficult not to sign).

Because Plaintiff has not demonstrated procedural unconscionability, the Court need not assess Plaintiff's argument that the contract is substantively unconscionable because it limited the liability of Defendant when its actions caused the Plaintiff to "suffer one of the gravest injuries of all." *See* ECF No. 25, at 3. The Court notes, however, that unlike a liquidated damages clause, it is immaterial whether a limitation of liability is a reasonable estimate of probable damages resulting from a breach, and the fact that personal injury is involved does not of itself make a limitation of liability clause unconscionable. *Schrier*, 533 A.2d at 1321, 1322–23. Additionally, as discussed above, the limitation on liability clause does not extend to Plaintiff's negligence claims.

Plaintiff, however, may re-raise this argument, if he develops a sufficient basis over the course of discovery.

## CONCLUSION

For the foregoing reasons, Defendant Fort Lincoln Cemetery, LLC's Motion to Dismiss, ECF No. 14, converted to a Motion for Judgment on the Pleadings, is, hereby, denied. Plaintiff's Motion for Summary Judgment, ECF No. 18, is, hereby, denied. Defendant's Motion for Summary Judgment limiting Plaintiff's Damages, ECF No. 21, is, hereby, granted, in part, and denied, in part. Plaintiff's damages for breach of contract are limited to $2,929.95, but the limitation on liability clause does not limit Plaintiff's damages for negligence.

The parties shall file a Joint Status Report, within fourteen days, including a proposed schedule for the case, as well as whether they would like referral to another U.S. Magistrate Judge of this Court for a Settlement Conference.

So ordered.

_2/23/2026_ _____
Date

_____ /s/ _____
Ajmel A. Quereshi
United States Magistrate Judge